# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| GREAT LAKES INSURANCE SE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18CV631 HEA |
| | ) | |
| AMCO INSURANCE COMPANY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

Plaintiff filed this declaratory judgment action seeking a declaration that its policy of insurance is not triggered for an underlying state court lawsuit against its insureds. Defendant Matt Lee moves to dismiss Plaintiff's Amended Complaint, [Doc. No. 13]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion will be denied.

### Facts and Background

For the purpose of this motion to dismiss, plaintiff's allegations are taken as true. Plaintiff alleges:

This declaratory judgment action is proper as a justiciable controversy exists between the parties regarding their respective rights and obligations under the policies attached to the First Amended Complaint, and resolution of matters raised

in this action will dispose of the issues between the parties under the various policies of insurance.

The controversy giving rise to this action arises from the underlying proceeding in which it is alleged, among other things, that there were various errors and omissions which occurred in connection with the construction of a residence being built for the Payne's in which TXR was the general contractor, and Matt Lee dba Lee Masonry was one of several subcontractors. There was no subcontractor agreement nor any other written agreement between TXR and Matt Lee dba Lee Masonry regarding the work on the Payne residence.

As a result of the underlying proceeding, certain requests were made on Great Lakes for defense of allegations asserted in the underlying proceeding by both Matt Lee dba Lee Masonry, and by TXR which is insured by AMCO Insurance Company, and Great Lakes is providing a defense to Matt Lee dba Lee Masonry under reservation of rights in the underlying proceeding.

The policy issued by Great Lakes to Matt Lee dba Lee Masonry contains multiple provisions applicable to the underlying proceeding.

The policy issued by AMCO Insurance Company to TXR contains multiple provisions applicable to the underlying proceeding, although for purposes of this declaratory judgment action as to TXR and AMCO, Great Lakes seeks only resolution of the responsibility of Great Lakes, if any, to TXR and AMCO, and the

responsibilities of TXR and AMCO, if any, to Great Lakes and Great Lakes' named insured, Matt Lee and Lee Masonry.

For coverage to be triggered under the policy issued by Great Lakes to Matt Lee dba Lee Masonry there must be: 1) property damage; 2) during the policy period; and 3) caused by an occurrence. Even if coverage is triggered, there is a question as to the application of certain exclusions and endorsements, both as to the claims against Matt Lee dba Lee Masonry, and as to the claims by TXR against Matt Lee and Lee Masonry, and the claims of AMCO and TXR as to the policy issued by Great Lakes to Matt Lee dba Lee Masonry.

The exclusions under the GL forms, 2 a., b., j., k., l. and m. as to the Great Lakes policy may apply to nearly all of the counts in the underlying proceeding. Provisions of the AMCO policy are at issue as between Great Lakes and AMCO regarding Great Lakes' duty, if any, to TXR and AMCO.

To the extent that there was an occurrence, there is a provision under Coverage A regarding the maximum amount Great Lakes is obligated to pay which refers to Section III, limits of insurance. That provision may be further affected by the provisions under Section IV, 4. Other Insurance, which includes, but is not limited to references to excess coverage and method of sharing.

There are multiple counts asserted in the underlying proceeding which, for purposes of this declaratory judgment, are summarized in the following subparagraphs:

**PETITION**

**Parties, Jurisdiction, and Venue**

1. The Paynes, husband and wife, are individuals residing in St. Louis County, Missouri and are Owners of a residential home located at Lots 152 and 153 KP1 at 282 Timber Ridge Lane, Four Seasons, MO 65049 (the "Property").

**Allegations Common to All Counts**

5. On or about May 7, 2014, Owners entered into a contract with TXR for TXR to demolish an existing house at the Property and to design and build a new residence (the "Residence") at the Property (the "Contract" and the "Project").

6. The Contract consists of the Standard Form of Agreement Between Owner and Design Building (AIA Document A141-2004, as modified by the parties), and includes, among other documents, the Terms and Conditions as set forth in Document A141-2004, Exhibit A (as modified by the parties). A true and accurate copy of the Contract, including its Terms and Conditions, is attached hereto as Exhibit 1 and is incorporated herein by reference.

7. As set forth in the Contract, through the following provisions (among other sections), TXR was responsible for all aspects of the Project:

a. TXR was responsible for all acts and omissions of TXR's "employees, Architect, Contractors, Subcontractors and their agents and employees, and other persons or entities . . . performing any portion of [TXR's] obligations . . . ." (Exh. 1, §A.3.2.3);

b. TXR was "solely responsible for and [had] control over all construction means, methods, techniques, sequences and procedures and for coordinating all portions of the [Project]." (Exh. 1, §A.3.3.5);

c. TXR was "responsible for the supervision of and direction of the [w]ork, using [TXR's] best skill and attention . . . ." (Exh. 1, §A.3.3.7); and

d. TXR was "responsible for inspection of portions of [w]ork already performed to determine that such portions [were] in proper condition to receive subsequent [w]ork." (Exh. 1, §A.3.3.8).

10. Inspection of the Residence, retaining walls, and columns shows *inter alia*, the following defects with the exterior masonry:

a. poor or missing flashing (particularly where stone veneer abuts wood finishes);

b. missing and/or inadequate caulking;

c. missing vapor barriers;

d. metal laths that were installed in the incorrect direction;

e. missing scratch coats;

f. weak mortar;

g. missing expansion joints where stone veneer meets concrete finishes; and

h. mortar joints that are excessively large and too tight.

11. As a result of the aforementioned defects, the exterior masonry and veneer is failing and its condition is worsening in the following respects:

a. Pieces of the veneer stone are falling off;

b. There is extensive cracking in the exterior of the walls of the Residence, as well as the retaining walls and columns;

c. Wood finishes that are not protected from water intrusion are discolored; and

d. The Residence is not adequately protected from water intrusion, which compromises the integrity of the interior wood structure, as well as creating hazards for mold.

**Count I - Breach of Contract**

18. TXR has breached the Contract by, among other deficiencies in TXR's performance (described above), failing to install proper flashing and water protection of the exterior masonry, providing poor workmanship, and failing to supervise the workers and/or contractors that installed the exterior veneer to ensure proper workmanship.

**Count II - Breach of Express Warranty**

22. TXR made express warranties and representations to Owners in the Contract, including as follows:

a. TXR warranted that "materials and equipment furnished . . . [would] be of good quality;"

b. TXR warranted "that the Work [would] be free from defects not inherent in the qualify required or permitted by law or otherwise;" and

c. TXR warranted "that the Work [would] conform to the requirements of the" Contract documents.

26. Owners notified TXR, repeatedly and within a reasonable time of discovery, of the extensive defects apparent in the exterior veneer.

**Count III - Unlawful Merchandising Practices Under**

**Section 407.025 R.S.Mo.**

31. The Residence built for the Project is "Merchandise" for purposes of the Missouri Merchandising Practices Act, pursuant to Section 407.020 R.S.Mo., defining "Merchandise" as "any objects, wares, good, commodities, intangibles, real estate or services."

32. From May 2014 and throughout the duration of the Project, TXR advertised and made representations to Owners in connection with the Residence.

35. TXR's action, set forth above, constitutes a deception, fraud, false pretense, and/or misrepresentation as described as Section 407.020, R.S.Mo., and thus violated the same, which prohibits such practices.

**DEFENDANT'S THIRD-PARTY PETITION**

12. Third Party Defendant's scope of work on the home included providing all labor, equipment and materials for installation of the exterior masonry and stone veneer. These elements are the issues about which Plaintiffs complain.

If Plaintiffs' allegations are true, Third Party Defendant's work is implicated.

13. Third Party Defendant's scope of work included installation of all weather resistant barriers, sealants, flashings and other items related to the installation of the exterior masonry and stone veneer.

**Count I - Negligence**

20. If any defect existed in the construction of the project that are the subject of Plaintiffs' Petition, the extent and nature of which are specifically denied, Third Party Defendant was negligent, careless, and/or reckless in its work on the construction of the home.

**Count III - Contribution**

29. Defendant/Third Party Plaintiff has and continues to deny liability with respect to Plaintiffs' claims. However, if Defendant/Third Party Plaintiff is required to pay a sum of money to Plaintiff, then under such circumstances it is entitled to contribution from Third Party Defendant.

**Count IV - Indemnity**

33. At all relevant times, Third Party Defendant had actual or constructive knowledge of its construction deficiencies and failed to inform Defendant/Third Party Plaintiff or Plaintiffs of said deficiencies.

35. Defendant/Third Party Plaintiff has and continues to deny liability with respect to Plaintiffs' claims. However, if Defendant/Third Party Plaintiff is required to pay a sum of money to Plaintiff, then under such circumstances it is entitled to indemnification from Third Party Defendant.

Certain forms and language in the policy issued by Great Lakes relevant to the determination of coverage are as follows:

a) Section II provides:

**SECTION II – WHO IS AN INSURED**

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

b) On page 10 of Form CG 00 01 07 98 of the policy, it states:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

c) On page 13 of Form CG 00 01 07 98, the policy states:

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

d) The commercial general liability (GL) policy includes an additional insured endorsement as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

This insurance applies only to . . . "property damage", . . . arising out of:

1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or

2. The project shown in the Schedule.

There is also an endorsement to Exhibit A which will be referred to as Exhibit A1 as follows:

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

**ADDITIONAL INSURED-OWNERS, LESSEES OR CONTRACTORS-SCHEDULED PERSON OR ORGANIZATION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location Of Covered Operations |
|---|---|
| TXR Architects and Constructors<br>101 Crossings West Drive Suite 200<br>Lake Ozark, MO 65049 | Any and All Location(s) Of Covered Operations |

Fully Earned Premium for this Endorsement: 100.

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

> **A. Section II -Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:
>
> **1.** Your acts or omissions; or
>
> **2.** The acts or omissions of those acting on your behalf;
>
> In the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.
>
> **B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:
>
> This insurance does not apply to "bodily injury" or "property damage" occurring after:
>
> **1.** All work, including materials, parts of equipment furnished in connection with such work, on the project (other than service, maintenance or repairs) to be performed by or on behalf of the additional insured(s) at the location of the covered operations has been completed; or
>
> **2.** That portion of "your work" out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

15. Exhibit A also provides in part as follows:

   a) **SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

   **1. Insuring Agreement**
   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
   . . .

   **b.** This insurance applies to . . . "property damage" only if:
   **(1)** The . . . "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
   **(2)** The . . . "property damage" occurs during the policy period; and

   **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the . . . "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   **c.** . . . "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that . . . "property damage" after the end of the policy period.

**d.** . . . "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the . . . "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the . . . "property damage"; or

**(3)** Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

b) **2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement;

or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.
. . .

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
. . .

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

c) An additional relevant exclusion by endorsement is as follows:

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**COMBINATION ENDORSEMENT-1** (Form GL 041-GL (04/07))

This policy does not apply to a claim or indemnification for punitive or exemplary damages.

Further, under the endorsement, no costs, interest, damages or expenses are covered for any claim for punitive or exemplary damages,

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

16. Various relevant definitions contained in Exhibit A are as follows:

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
. . .

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

. . .

**22.** "Your work":

**a.** Means:

**(1)** Work or operations performed by you or on your behalf; and

**(2)** Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

**(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

**(2)** The providing of or failure to provide warnings or instructions.

17. To the extent any of the defendants herein have any other coverages that may cover one or more claims in the underlying proceeding, either for defense or indemnification, Great Lakes is entitled to a pro rata sharing of defense costs and/or a pro rata sharing of any settlement or judgment, and Great Lakes' exposure may be further limited as more fully set forth under Coverage A which references Section III-LIMIT OF INSURANCE, as well as Section IV, specifically 4. Other Insurance, including provisions thereunder regarding excess and primary insurance, as well as Method of

Sharing. In no event however, shall Great Lakes ever be obligated to pay more than the sum of $2 million as the general aggregate limit is $2 million, of which products completed operations is a part of the general aggregate limit, and the exposure of Great Lakes per occurrence is a maximum of $1 million.

18. The policy issued by AMCO to TXR includes an endorsement, CG 7287 12 11 "DEFINITION OF OCCURRENCE AMENDATORY ENDORSEMENT FOR CONSTRUCTION DEFECTS" which replaces the definition of "occurrence" under Section V, to provide in part that an accident includes:

b. "Property damages" to:

(1) The property of others, or

(2) "Your work", if "your work" was:

(a) Damaged by the work of a subcontractor who performed work on your behalf in the construction, alteration, renovation, repair or maintenance of a building, structure, highway, road, bridge, water line, sewer line, oil line, gas line, appurtenance or other improvement to real property, including any moving, demolition or excavation, and;

(b) The resulting "property damage' is included in the "products-completed operations hazard."

**All terms and conditions of this policy apply unless modified by this endorsement.**

19. Exhibit B expressly provides that pursuant to 4.a. on page 12 of Form CG 00 01 04 13 that it is primary as the excess provisions under 4b. on that same page are inapplicable.

20. Due to the foregoing facts and policy provisions, Great Lakes seeks the following relief: 1) a determination by this Court that AMCO is primarily and expressly obligated to provide defense and indemnity to TXR, and only after full indemnity is provided under the AMCO policy shall any obligation of Great Lakes to TXR be triggered; 2) pursuant to Form CG 72 8712 11 in Exhibit B, AMCO has the responsibility to the Paynes in the underlying proceeding for the damages claimed as AMCO expressly included property damage within the definition of "occurrence" to include a contractor's work which is claimed to have been damaged by a subcontractor; 3) even if any obligation of Great Lakes to TXR is triggered, Great Lakes shall have the right to have this Court determine the applicability of exclusions under the policy; 4) a determination that the claims by the Paynes against Matt Lee dba Lee Masonry do not constitute an "occurrence" under the Great Lakes policy attached as Exhibit A, or if they do, such claims are excluded in whole or in part by endorsement or exclusion; and 5) any obligation of Great Lakes that may be ultimately determined is a maximum of $1 million per occurrence, and $2 million in the aggregate, and that this Court also determine

whether that maximum exposure may be further affected by the provisions set forth under Section IV, Other Insurance of Exhibit A.

Defendant Matt Lee d/b/a Lee Masonry moves to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## Legal Standard

The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326–27 (1989)). "To survive a motion to dismiss, a claim must be facially plausible, meaning that the 'factual content...allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Cole v. Homier Dist. Co., Inc.*, 599 F.3d 856, 861 (8th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court must "accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Id*. (quoting *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005)). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster. *Iqbal*, 556 U.S. at 678.

## Discussion

Taking the allegations contained in the Declaratory Judgment First Amended Complaint as true, Plaintiff has adequately pled its action. Plaintiff alleges that it is providing a defense to Matt Lee d/b/a Lee Masonry under a reservation of rights in the underlying proceeding. It has alleged that there are multiple provisions applicable to the underlying proceeding. It has alleged the requirements for the policy to be triggered: there must be property damage, during the policy period, which was caused by an occurrence. Plaintiff has further alleged that the various exclusions contained in the policy may be applicable. Additionally, Plaintiff has alleged that the limits of the policy may be relevant as well.

Defendant argues that the underlying lawsuit includes negligence claims, an occurrence and that the exclusions do not apply. Defendant argues the exclusions do not apply because the underlying lawsuit contains allegations regarding Defendant's work. Defendant however is seeking a determination in his motion that in reality seeks the ultimate relief sought by the declaratory judgment action. In essence, Defendant's Motion is a motion for judgment rather than a dismissal under Rule 12(b)(6).

## Conclusion

Plaintiff's First Amended Complaint satisfies the Rule 12(b)(6). Based upon the foregoing analysis, Defendants' motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss (Doc. No. 13] is **Denied**.

Dated this 1ˢᵗ day of February, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE